**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DORMIE SMITH, on behalf of herself          )
and as Administrator of the Estate of       )
Brandon Smith, MARY SMITH, and              )
TAVARIS SMITH,                              )
                                            )
    Plaintiffs,                           )
                                            )          Case No. 19-cv-5319
    v.                                    )
                                            )          Judge Robert M. Dow, Jr.
VILLAGE OF BROADVIEW,                       )
VILLAGE OF RIVERSIDE, VILLAGE               )
OF BERWYN, WEST SUBURBAN                    )
MAJOR CRIMES TASKFORCE,                     )
JAMES LAZANSKY, ERIC DAVIS,                 )
OFFICER A, UNKNOWN OFFICERS,                )
and UNKNOWN WESTAF OFFICERS,                )
                                            )
    Defendants.

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth below, the motions to dismiss [29, 31, 33, 51] are granted in part and denied in part. Specifically, the motions are granted with respect to the following counts: Counts I through VI, VIII, X, XVI, XVIII, and XXI. The motions are denied with respect to Count IX. The motions to dismiss Count XIX are granted with respect to Defendants Davis, Lazansky, and unknown WESTAF officers, but denied with respect to Defendants unknown Broadview Police officers. The motions to dismiss Count XX are granted with respect to the City of Berwyn, but denied with respect to all other Defendants. All dismissals are without prejudice. Plaintiffs are given until July 10, 2020, to file an amended complaint, if they wish and can do so consistent with Federal Rule of Civil Procedure 11. This case is set for further status on July 22, 2020 at 9:00 a.m.

## I.    Background[1]

The factual allegations in the complaint are somewhat sparse—a mere three and a half pages, compared to eighteen pages of legal claims asserting twenty-one counts against the defendants—but the Court sets forth as much of the necessary background as it can.  On August 7, 2017, around 1:22 a.m., someone shot Brandon Smith in the neck outside the home of his grandmother, Mary Smith, in Broadview, Illinois. [1, at ¶ 13.]  Mary[2] called 911 to request emergency aid for Brandon.  At some point, Brandon went into Mary's house [*Id. at ¶* 29] and then went to the curb to wait for paramedics. [*Id.*, at ¶¶ 14-15.]  Before paramedics arrived, Village of Broadview police officer Eric Davis and other unknown officers arrived and began questioning Brandon. [*Id.* at ¶ 16.]  They did not provide medical aid to Brandon or call for additional assistance, and they prevented Mary, who is a CNA,[3] from providing medical assistance. [*Id.* at ¶¶ 17-18.]  The officers told Mary that if she left her house, they would arrest her. [*Id.* at ¶ 19.]  Paramedics arrived around 2:00 a.m. but Officer Davis and unknown officers prevented them from treating Brandon immediately. [*Id.* at ¶ 21.]  Brandon went into cardiac arrest, was transported to a hospital, and was pronounced dead at approximately 2:17 a.m. [*Id.* at ¶¶ 22, 23, 25.]  According

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

[2] Because so many of the relevant players in the dispute have the same last name, the Court uses first names where necessary to avoid confusion.

[3] Presumably "CNA" means "Certified Nursing Assistant," but the complaint does not explain the abbreviation.

to Plaintiffs, Brandon's death was caused by "the 30-40 minute delay in treatment" resulting from actions by the Village of Broadview, Officer Davis, and other unknown officers. [*Id.* at ¶ 26.]

At some point during the night, officers from the West Suburban Major Crimes Task Force ("WESTAF") entered Mary's house and prevented anyone from entering or leaving. Brandon's cousin Tavaris snuck past the WESTAF officers and into the house. [*Id.* at ¶ 27.] WESTAF officers obtained a search warrant for Mary's home that authorized them to search for and seize:

> Any and all forensic, latent or patent items of evidentiary value, including but not limited to clothing, cellular phones, firearms, blood, hairs, fibers, fingerprints, other biological materials, trace evidence and any additional items deemed as evidence pertaining to the death of Brandon Smith, which have been used in the commission of, or which constitute evidence of the offense of 1st Degree [M]urder.

[*Id.* at ¶ 30.] In carrying out that search, Detective James Lazansky[4] and other unknown WESTAF officers caused permanent damage to Mary's home, including destroying doors, cutting holes in her ceiling, and tossing the contents of drawers, wardrobes, and cabinets. [*Id.* at ¶ 32.] They seized Mary's life savings ($10,000.00 in cash), jewelry, prescription medication, and other items that did not fall within the purview of the warrant. [*Id.* at ¶ 31.] During the search, Detective Lazansky and other unknown WESTAF officers refused to let Mary leave her home, found Tavaris and made him take off his pajamas, and brought a K-9 unit to search the home. [*Id.* at ¶¶ 33-35.] The officers also seized Mary's and Tavaris's personal phones. [*Id.* at ¶ 37.]

Dormie Smith, Brandon's mother, later went to a Broadview Police Department station to complain about how her family had been treated. [*Id.* at ¶ 38.] Someone told Dormie that no complaint forms existed and she could not file a complaint. [*Id.* at ¶ 39.] (The complaint filed in this case does not state when Dormie visited the police station or with whom she spoke.)

---

[4] According to the Village of Riverside, James Lazansky is a detective (see [21, at 1]), so the Court will use that title to refer to him.

Brandon's family has not received any information about who shot Brandon, and the police have not returned the items they seized. [*Id.* at ¶ 40.]

On August 7, 2019, Plaintiffs Mary, Tavaris, and Domie Smith[5] filed a twenty-one count complaint against various police officers, municipalities, and other entities. The defendants fall into four groups: (1) Officer Eric Davis, unknown Broadview police officers, and their employer the Village of Broadview; (2) the West Suburban Major Crimes Task Force ("WESTAF"); (3) Detective James Lazansky, one or more unknown WESTAF officers, and their employer the Village of Riverside; and (4) one or more unknown WESTAF officers and their employer the City of Berwyn. [*Id.* at ¶¶ 7-10.]

On May 11, 2020, at Plaintiffs' request and with Defendants' agreement, the Court dismissed with prejudice Counts X[I] (Wrongful Death); Count XII (Survival); Count XIII (Negligence); Count XIV (Willful and Wanton Conduct); Count XV (Breach of Duty to Train and Supervise); and Count XVII (Conversion). The remaining claims are:

- Count I (42 U.S.C. § 1983 – Unlawful Seizure)
- Count II (42 U.S.C. § 1983 – Denial of Medical Care)
- Count III (42 U.S.C. § 1983 – Failure to Provide Medical Attention)
- Count IV (42 U.S.C. § 1983 – Deliberate Indifference to Serious Medical Need)
- Count V (42 U.S.C. § 1983 – Due Process/Special Relationship)
- Count VI (42 U.S.C. § 1983 – False Imprisonment)
- Count VII (42 U.S.C. § 1983 – Unreasonable Search)
- Count VIII (42 U.S.C. § 1983 – Illegal Seizure)
- Count IX (42 U.S.C. § 1983 – Unreasonable Seizure of Property)
- Count X (42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights)
- Count XVI (Intentional Infliction of Emotional Distress)
- Count XVIII (Abuse of Process)

---

[5] Both personally and in her capacity as the administrator of Brandon's estate. [1 at ¶ 3.]

4

- Count XIX (First Amendment Retaliation)
- Count XX (745 ILCS 10/9-102 – Indemnification)
- Count XXI (*Respondeat Superior* Liability)

Four defendants or groups of defendants filed motions to dismiss under Rule 12(b)(6), which are currently before the Court. [29, 31, 33, 51.]  Combined, these motions seek dismissal of all remaining counts except Count VII.

## II.     Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original).  Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558.  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).  However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to

infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

## III. Analysis

### A. Counts I through V

Counts I-III and V are pled against Officer Eric Davis and unknown Broadview Police officers, and Count IV is pled against Officer Davis, unknown Broadview Police office, and the Village of Broadview, collectively "the Broadview Defendants." The Broadview Defendants moved to dismiss these five counts. The Court addresses each count in turn.

#### i. Count I (Unlawful Seizure)

Section 1983 allows an individual to sue any person who, under the color of state law, violates that individual's constitutional rights. 42 U.S.C. § 1983. In Count I, Plaintiffs claim that Officer Davis and unknown Broadview Police officers violated the Fourth Amendment, specifically the "right of the people to be secure in their persons * * * against unreasonable searches and seizures." U.S. Const. amend. IV; see also *Martin v. Marinez*, 934 F.3d 594, 598–99 (7th Cir. 2019) (discussing the interplay between § 1983 suits and the Fourth Amendment bar on unreasonable seizures). A Fourth Amendment "seizure" of a person occurs "whenever a police officer 'by means of physical force or show of authority * * * in some way restrain[s] the liberty

of a citizen.'" *Acevedo v. Canterbury,* 457 F.3d 721, 725 (7th Cir. 2006) (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, (1968)). Where the seizure involves the use of physical force, a seizure occurs whenever "an officer restrains the freedom of a person to walk away," *Tennessee v. Garner,* 471 U.S. 1, 7 (1985), such as by the "laying on of hands or [other] application of physical force to restrain movement, even * * * unsuccessful[ly]," *California v. Hodari D.,* 499 U.S. 621, 626 (1991). Seizure of a person without physical contact is also possible—the officer must make a "show of authority" that a reasonable person would understand to mean that he is not "free to leave," and he must submit to that show of authority. *Hawkins v. Mitchell*, 756 F.3d 983, 992–93 (7th Cir. 2014), (citing *Hodari D.*, 499 U.S. at 626-27).

The complaint fails to plead a seizure either by physical force or show of authority. It does not allege that Officer Davis and unknown Broadview police officers restrained Brandon's freedom in any way, nor that they made any show of authority at all (much less one that a reasonable person would understand to mean that he was not free to leave), nor that Brandon submitted to any show of authority. In response, Plaintiffs argue that the Officer Davis and the unknown Broadview officers prevented Mary from approaching Brandon. [40, at 2] (citing [1, at ¶ 18]). That is not an allegation that any defendant restrained Brandon by force or made a show of authority toward Brandon to which he submitted; therefore, it cannot qualify as a seizure of Brandon. For these reasons, the complaint fails to plead that Officer Davis or the unknown officers seized Brandon, and Count I is dismissed, but Plaintiffs will have a chance to amend the claim. The Court sees no reason to depart from the Seventh Circuit's general rule that when granting a motion to dismiss under Rule 12(b)(6), the Court should do so without prejudice. See, *e.g.*, *Bogie v. Rosenberg,* 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the

complaint to correct the problem if possible."); *Bausch v. Stryker Corp.,* 630 F.3d 546, 562 (7th Cir. 2010) (reversing dismissal with prejudice); *Foster v. DeLuca,* 545 F.3d 582, 584–85 (7th Cir. 2008) (reversing dismissal with prejudice where district court did not explain reason for denying leave to amend). Therefore, the dismissal of Count I is without prejudice.

### ii.        *Count II (Denial of Medical Care)*

Count II alleges that Officer Davis and unknown Broadview police officers unreasonably denied Brandon medical care in violation of the Fourth Amendment and Section 1983. The Fourth Amendment reasonableness standard applies to a person who has been arrested but who has not yet had a probable cause hearing. See *Lopez v. City of Chicago,* 464 F.3d 711, 719 (7th Cir. 2006) ("Our cases thus establish that the protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction."). The complaint does not allege that Brandon was under arrest. As discussed above, he had not even been seized. Plaintiff cites no authority (and the Court is not aware of any) stating that the Fourth Amendment reasonableness standard applies to police interactions with someone who has not even been seized. As a result, the complaint fails to state a claim that Officer Davis and unknown Broadview police officers violated Brandon's Fourth Amendment rights by denying him medical care, and Count II is dismissed without prejudice.

### iii.        *Count III (Failure to Provide Medical Attention)*

Count III asserts that Officer Davis and unknown Broadview police officers were "deliberately indifferent to [Brandon's] serious medical need" by failing to provide him with medical attention. [1, at ¶ 51.] This appears to be an Eighth Amendment claim (see, *e.g.*, *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (the culpable mental state required to state

8

a claim under the Eighth Amendment is "one of deliberate indifference to inmate health and safety"), thought the Broadview Defendants treat it as a Fourteenth Amendment claim (see [31, at 6-8]), and the complaint is not clear about which amendment Claim III rests on. Either way, Count III fails to state a claim. Brandon was not convicted and incarcerated, so the Eighth Amendment does not apply, nor was he a pretrial detainee, so the Fourteenth Amendment does not apply. See, *e.g.*, *Annan v. Vill. of Romeoville*, 2013 WL 673484, at *5 (N.D. Ill. Feb. 25, 2013) ("Since [the plaintiff] does not allege that any constitutional violation occurred after a *Gerstein* probable cause hearing, the Fourteenth Amendment and the deliberate indifference standard are inapplicable to this case."). Thus, Count III is dismissed without prejudice.

### iv. Count IV (Deliberate Indifference to Serious Medical Need)

Count IV appears to argue (1) that Officer Davis and the unknown officers' seizure of Brandon violated his Fourth and Fourteenth Amendment rights by being deliberately indifferent to his serious medical need [1, at ¶ 55], and (2) that the Village of Broadview had unreasonable delays in its emergency alert system that violated Brandon's Fourth and Fourteenth Amendment rights [*Id.* at ¶¶ 57, 60]. To the extent that Count IV asserts a claim against Officer Davis and the unknown officers, whether under the Fourth or Fourteenth Amendment, Count IV fails for the reasons discussed above.

Despite ¶ 55 of the complaint, the parties treat Count IV as only a *Monell* claim against the Village of Broadview. In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the Supreme Court established that a municipality may be liable for money damages under § 1983 only if the unconstitutional act about which the plaintiff complains was caused by (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final

9

policy-making authority. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690).

Plaintiffs argue that the complaint pleads Broadview's policy of unreasonable delays in the emergency response system through ¶ 58, which states "In fact, MARY SMITH herself had previously requested medical aid for a person that was unreasonably delayed by dispatch." Plaintiffs are correct that they do not necessarily need to plead specific instances of other people suffering from the alleged policy. See, e.g., *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"). The problem with the complaint is not that it relies solely on a plaintiff's personal experience, but that the allegation of a policy or practice of delay is too vague and conclusory.

The Seventh Circuit has interpreted *Twombly* and *Iqbal* to require the plaintiff to "provid[e] some specific facts" to support the legal claims asserted in the complaint. *Brooks,* 578 F.3d at 581. The degree of specificity required is not easily quantified, but "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). Stripping away the paragraphs in Plaintiffs' complaint that simply restate the elements of the claim,[6] the Court is left with this limited allegation: on some date, Mary Smith somehow requested medical aid from someone— presumably a City of Broadview emergency dispatcher—that was in some way delayed. [1, at ¶ 58.] Though it may technically be a factual assertion, this paragraph raises more questions than it provides answers, and it certainly does not articulate any alleged policy or practice of the Village

---

[6] See *McCauley v. City of Chicago*, 671 F.3d 611, 616-618 (7th Cir. 2011) ("conclusory allegations merely reciting the elements of the claim are not entitled to [a] presumption of truth" and "contribute nothing to the plausibility analysis under *Twombly/Iqbal*").

of Broadview. The limited material in the complaint is too vague and conclusory to push Plaintiffs' claim of a policy of delaying emergency responses "across the line from conceivable to plausible." *Iqbal*, 129 S.Ct. at 1952 (quoting *Twombly*, 550 U.S. at 570). Count IV fails to state a claim and is therefore dismissed without prejudice.

> v.     *Count V (Due Process/Special Relationship)*

Count V alleges that Brandon was in custody of Officer Davis and unknown Broadview police officers, that the they therefore had a duty to assume responsibility for Brandon's wellbeing, and that by failing to provide medical assistance, the Broadview Defendants violated Brandon's Fourteenth Amendment substantive due process rights. [1, at ¶¶ 65, 67.] This claim too is a nonstarter. As discussed above, the complaint fails to plead that Brandon was seized and in the Broadview Defendants' custody.

Plaintiffs respond that the Broadview Defendants limited Brandon's ability to care for himself and affirmatively placed Brandon in danger. But the facts pled in the complaint do not support either argument. The complaint does not plead that the Broadview Defendants stopped Brandon from caring for himself, or took him out of the care of a medical professional (or even his grandmother) or caused Brandon to face any danger in addition to the gunshot wound he sustained before police responded to the 911 call. In the absence of such facts, the complaint fails to state a claim for a Fourteenth Amendment substantive due process violation.

Plaintiffs' references to *Salazar v. City of Chicago* do not help Plaintiffs show that Brandon was in custody. 940 F.2d 233 (7th Cir. 1991). In *Salazar*, the decedent had crashed his car, appeared intoxicated, refused to go to a hospital, was arrested, and later died after being booked at a police station. One question the Seventh Circuit addressed was whether the decedent was in the paramedics' custody. The paramedics' attorney conceded at oral argument that the decedent was

11

in their custody. *Salazar*, 940 F.2d at 237.  The Seventh Circuit did not determine that the decedent was not free to seek other forms of assistance, and Plaintiffs' quotation of language to that effect is from a hypothetical the Seventh Circuit posed, not a conclusion it reached based on analysis of the paramedics' actions. *Id.* at 237. ("*If* Salazar was in custody from the time the paramedics arrived—that is, *if* he was not free to seek other forms of assistance—then the paramedics might be liable for violating Salazar's right to due process by failing to treat his injuries.") (emphasis added).

Plaintiffs' other references to case law fare no better, as they are premised on a person being in custody, which is the very thing Plaintiffs have not demonstrated. See *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989) ("*when the State takes a person into its custody* and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being") (emphasis added); *Archie v. City of Racine*, 847 F.2d 1211, 1222 (7th Cir. 1988) ("*Once it has taken a person into custody*, the state must afford humane medical treatment * * *.") (emphasis added).  Nor is Plaintiffs' assertion of a "special relationship" supported by their citations.  *Archie* explains that the principle is limited times "[w]hen the state puts a person in danger," and the state's duty under the Due Process Clause is limited to "protect[ing] him to the extent of ameliorating the incremental risk." *Id.* at 1223.  The complaint does not allege that any defendant shot Brandon, i.e. put him in the danger he was facing, or that any defendant failed to ameliorate the incremental risk the state caused, so it does not allege that the defendants owed Brandon any special duty.  Count V is dismissed without prejudice.

B.    **Counts VI, VIII, and IX**

Counts VI through IX are pled against Detective James Lazansky and unknown WESTAF officers. These defendants do not challenge Count VII (Unreasonable Search) but move to dismiss Count VI (False Imprisonment), Count VIII (Illegal Seizure of Property), and Count IX (Unreasonable Seizure of Property).

### i. Count VI (False Imprisonment)

In Count VI, Plaintiffs Mary and Tavaris allege that Detective Lazansky and unknown WESTAF officers falsely imprisoned them by detaining them without probable cause during the search of Mary's house in violation of the Fourth Amendment. [1, at ¶ 70.] The complaint also admits, however, that Lazansky and the other WESTAF officers lawfully obtained a search warrant for the house [*id.* at ¶ 142.], and it is well established that officers executing a search warrant may detain occupants of the premises while the search is being conducted. *Michigan v. Summers*, 452 U.S. 692, 705 (1981). Though *Summers* dealt with a search for contraband and took no position on searches for evidence of a crime, later cases have treated searches for evidence the same way. See, *e.g.*, *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (affirming dismissal of false arrest claim because "officers may detain the occupants of a location to be searched when they execute a valid warrant if they have a valid reason for doing so—that is, an articulable basis for suspecting criminal activity and a valid law enforcement interest"). Here, according to the complaint, Mary and Tavaris were detained in Mary's house during the execution of a lawfully obtained search warrant for Mary's house. That is insufficient to state a claim for false imprisonment, and Count VI is dismissed without prejudice.

### ii. Count VIII (Illegal Seizure)

Count VIII alleges that Detective Lazansky and unknown WESTAF officers exceeded the scope of the warrant by detaining Mary in her room during the search of her house and by denying

her the ability to communicate with family members. [1, at ¶ 80.] Count VIII as pled is a slightly more specific version of Count VI, and it fails for the same reason: the complaint pleads that Mary was detained during the execution of a lawfully obtained search warrant for her house. The assertion that the detention exceeded the scope of the warrant is conclusory, not supported by any factual allegations, and insufficient to state a plausible claim for an illegal seizure. Therefore, Count VIII is dismissed without prejudice.

### iii. Count IX (Unreasonable Seizure of Property)

In Count IX, Plaintiffs assert that Detective Lazansky and unknown WESTAF officers exceeded the scope of the search warrant and unreasonably seized Tavaris and Mary's cell phones and other personal property in violation of the Fourth Amendment. [1, at ¶¶ 86-88.] Specifically, the complaint alleges that Lazansky and unknown WESTAF officers seized "Mary's life savings ($10,000 cash), jewelry, prescription medication, and other items that did not fall within the purview of the warrant." [*Id.*, at ¶ 31.] Detective Lazansky and the unknown WESTAF officers move to dismiss on the ground that the seized items fall within the scope of the search warrant and the complaint therefore fails to state a claim for illegal seizure.

The relevant search warrant authorized seizure of:

> "Any and all forensic, latent, or patent items of evidentiary value, including but not limited to clothing, cellular phones, firearms, blood, hairs, fibers, fingerprints, other biological materials, trace evidence and any additional items deemed as evidence pertaining to the death of Brandon Smith which have been used in the commission of or which constitute the offense of 1st Degree Murder"

[29-2, at 4]. The Court first addresses whether the complaint, which quotes this language at ¶ 30, adequately states a claim that the seizure of Mary's personal items exceeded the scope of the warrant and was unreasonable under the Fourth Amendment. Detective Lazansky and the unknown WESTAF officers argue that all of the seized items had evidentiary value and were

therefore covered by the search warrant. That may be correct, but it is not the only plausible interpretation of the warrant and the officers' seizure of cash, prescription medicine, and jewelry in a murder investigation, and it is not the version of events pled in the complaint. Additionally, Mary and Tavaris allege that the seizure of their cell phones exceeded the scope of the warrant. The warrant does specifically authorize seizure of "cellular phones," but it appears that Mary and Tavaris deny that their phones were "of evidentiary value" in the murder investigation and therefore not within the scope of the warrant. This is a closer call, but Plaintiffs' version is plausible. The Court finds that Count IX states a claim for unreasonable seizure of property in violation of the Fourth Amendment and denies the motion to dismiss with respect to that count.

### C.    Count X (Conspiracy)

Count X alleges in summary fashion that Officer Davis, Detective Lazansky, unknown Broadview police officers, and unknown WESTAF officers conspired among themselves to "punish Brandon Smith and his family for a crime he did not commit" in violation of his constitutional rights. [1, at ¶ 92.]

To state a § 1983 conspiracy claim, a plaintiff must allege that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Along with these elements, the plaintiff must allege the parties, the general purpose, and the approximate date of the conspiracy. *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). In addition, the complaint must also plead *some* factual allegation about "the nature of the agreement" or "what role [a defendant] might have played or agreed to play" in relation to the alleged violation of the plaintiff's rights. *Walker v. Thompson,* 288 F.3d 1005, 1007–08 (7th Cir. 2002). Even before *Twombly* and *Iqbal*, "a bare allegation of conspiracy was not enough to survive a motion to dismiss

for failure to state a claim." *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). While not subject to Fed. R. Civ. P. 9, conspiracy allegations are "often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her [is] not enough" to survive a motion to dismiss. *Id.*, 583 F.3d at 971.

Count X contains little more than a recitation of the elements of a conspiracy, making it a bare allegation that is insufficient to enable Defendants to prepare defenses or for the Court "to determine whether the claim [is] within the ballpark of possibly valid conspiracy claims." *Walker*, 288 F.3d at 1008; see also *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1076 (N.D. Ill. 2018) (unsupported allegations that defendants had conspired were mere "labels and conclusions that cannot save this claim absent any supporting factual allegations"). There are no factual allegations in the complaint about what role any defendants played or agreed to play, or how they made their alleged agreement, or even that any communicated with each other about Brandon, a logical predicate to forming an agreement. For these reasons, Count X is dismissed without prejudice.

### D.    Count XIX (First Amendment Retaliation)

Count XIX alleges that Defendants—apparently all of them, as the complaint is not specific—retaliated against Plaintiffs in violation of their First Amendment rights. Plaintiffs state that Dormie Smith went to a Broadview Police station to complaint about how her family was treated. [1, at ¶ 38.] Plaintiffs do not say when this happened. Plaintiffs allege that when Dormie asked for a complaint form, someone told her that the forms no longer existed. [1, at ¶ 39.] As a result of Dormie's attempt to lodge a complaint, Plaintiffs state that "the family has not been provided with an update on who shot Brandon Smith; moreover, the police department has refused to return any of the items they unlawfully seized." [1, at ¶ 40.]

16

To establish a prima facie case of First Amendment retaliation, a plaintiff must establish that (1) she engaged in activity protected by the First Amendment, (2) she suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was a "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (citing *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006)).

The complaint does not allege that Officer Davis, Detective Lazansky, or unknown WESTAF officers were involved in any decision to take retaliatory action; no factual allegations suggest that these defendants were at all involved in telling Dormie that complaint forms no longer existed, or declining to provide information about the investigation into Brandon's shooting, or declining to return seized items. To the extent that Count XIX asserts claims against these defendants, those claims are dismissed without prejudice.

The Broadview Defendants did not, however, move to dismiss Count XIX with respect to the unknown officers. See [31, at 14-15] (arguing only that Count XIX fails to state a claim with respect to Officer Davis). And the complaint, construed as liberally as the Court can manage, does make out a claim for First Amendment retaliation against at least one unknown officer. Dormie attempted to lodge a grievance against police officers, an action that is likely protected by the First Amendment. See *Abrams v. Walker,* 307 F.3d 650, 654 (7th Cir. 2002), abrogated on other grounds by *Spiegla v. Hull,* 371 F.3d 928 (7th Cir. 2004) (collecting cases describing First Amendment protection of a citizen's right to reasonably criticize police officers). A police officer's refusal to provide a complaint form, to update a victim's family on an investigation, and to return seized items would like deter future attempts to complain about police behavior. And the complaint alleges that at least one unknown officer from the Broadview Police Department made those

17

denials as a result of Dormie's attempt to file a complaint. Thus, Count XIX is not dismissed in its entirety, but stands to the extent that it asserts a claim against unknown police officers employed by the Village of Broadview.

### E.     State Law Claims

The remaining claims—Count XVI (Intentional Infliction of Emotional Distress), Count XVIII (Abuse of Process), Count XX (Indemnification) and Count XXI (*Respondeat Superior* Liability)—all arise from state law. Defendants move to dismiss all four. The Court addresses each in turn.

#### i.     *Statute of Limitations*

Defendants argue that Plaintiffs' state-law claims are barred by a statute of limitations. A motion to dismiss based on a statute of limitations defense is properly brought under Rule 12(b)(6). *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Although the statute of limitations is an affirmative defense, a court may dismiss a claim as time-barred if the complaint sets forth the necessary information to show that the statute of limitations has expired. See, *e.g.*, *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018); *Brooks*, 578 F.3d at 579; *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Here, Defendants argue that the allegations in the complaint demonstrate that the statute of limitations has run on Plaintiffs' claims for intentional infliction of emotional distress ("IIED") and abuse of process.

Under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), the statute of limitations for state law claims made against units of local government, or their employees, is one year. 745 ILCS 10/8–101; *Huon v. Mudge*, 597 F. App'x 868, 878 (7th Cir. 2015). The act covers claims against a "local public entity," which includes "any intergovernmental agency or similar entity formed pursuant to the Constitution of the State

of Illinois or the Intergovernmental Cooperation Act * * *" 745 ILCS 10/1-206.  Defendant

WESTAF is a local public entity within the meaning of §10/1-206 of the Tort Immunity Act. 745

ILCS 10/1-206; see also *Maltby v. Winston*, 36 F.3d 548, n. 14 (7th Cir. 1994).  As municipalities,

the Village of Broadview, the Village of Riverside, and the City of Berwyn are also "public

entities" within the meaning of the statute. See 745 ILCS 10/1-206.

Beginning with the IIED claim, Plaintiffs here have pled themselves out of court because

the complaint does not allege any wrongful act by any defendant within the statute of limitations

period.  The complaint was filed on August 7, 2019.  It describes actions that officers took on

August 7, 2017, which are well outside of the one-year statute of limitations.  To the extent that

the IIED claim is based on Defendants' conduct on August 7, 2017, it would be barred by the Tort

Immunity Act.

In response, Plaintiffs argue that "Plaintiffs' complaint is best read as alleging a (non-

exhaustive) series of continuing wrongs." [53, at 3.]  Plaintiffs attempt to support this argument

by asserting that Dormie's trip to a Broadview Police station to file a complaint "happened a

significant period of time after" August 7, 2017.  This position fails to rescue Plaintiffs' IIED claim

for several reasons.  First, the argument is raised in Plaintiffs' response brief but the underlying

facts—most importantly, the date of the trip to the police station—are not pled in the complaint,

and a complaint may not be amended by briefs in opposition to a motion to dismiss. *Bissessur v.*

*Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009), citing *Car Carriers, Inc. v. Ford*

*Motor Co.,* 745 F.2d 1101, 1103 (7th Cir. 1984).  But even Plaintiffs' response briefs do not include

a date that brings the allegedly wrongful action within the statute of limitations period. [7]  And

---

[7] Plaintiffs have declined five opportunities to state the date of Dormie's visit to the police station: the complaint [1], their response to Berwyn's motion to dismiss [38], their response to Riverside's motion to dismiss [39], their response to Broadview's motion to dismiss [40], and their response to WESTAF's motion to dismiss [53].

finally, IIED is not a continuing tort under Illinois law. *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013), citing *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006), overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).

As the complaint is pled, the IIED claim is barred by the statute of limitations. But Plaintiffs may know facts that would bring the claim within the one-year limitations period and simply failed to include them in the complaint. To give Plaintiffs a chance to flesh out their pleadings, and because the Court is giving Plaintiffs a chance to amend other claims, Count XVI is dismissed without prejudice.

The analysis for Count XVIII (Abuse of Process) is similar. Count XVIII assert that Detective Lazansky abused the legal process by obtaining a search warrant for Mary's house on August 7, 2017. [1, at ¶¶ 139-143.] Defendants argue that the abuse of process claim is time-barred under the Tort Immunity Act, as it was filed more than one year after the execution of the search warrant for Mary's home. See *Phelps v. Klipfel*, 1991 WL 285279, at *3 (N.D. Ill. 1991) (abuse of process claim dismissed as time-barred under Tort Immunity Act per the defendants' Rule 12(b)(6) motion).

Plaintiffs argue that Count XVIII is saved by the discovery rule, under which the beginning of the statute of limitations period for filing a suit is changed from the date when the plaintiff is wronged to the date when he discovers he has been injured, citing *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir. 1990). According to Plaintiffs, because the complaint does not allege that they read or obtained a copy of the search warrant on August 7, 2017, the discovery rule applies and the claim cannot be dismissed. [53, at 4-5.]

Plaintiffs' discovery rule argument in the briefs is not grounded in facts pled in the complaint. What Plaintiffs are in fact asking the Court to do is read into the complaint allegations

that Plaintiffs did not receive a copy of the search warrant on August 7, 2017, and further that they did not receive it until sometime after August 7, 2018, for that would be the timeline required for the discovery rule to save Count XVIII from being barred by the statute of limitations. This the Court cannot do; drawing reasonable inference on behalf of the plaintiff does not mean the Court may invent facts or fill in dates that are convenient for the plaintiff. See *Smith-Bey v. Hosp. Adm'r*, 841 F.2d 751, 758 (7th Cir. 1988) (even liberal construction of *pro se* prisoner complaint "does not mean that the district court must invent factual scenarios that cannot be reasonably inferred from the pleadings"); *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 828 (7th Cir. 2019) (affirming dismissal of complaint when "a speculative leap, not a reasonable inference" was required to move from sparse allegations to the plaintiff's conspiracy claim); *Campbell-Salahuddin v. Ford Motor Co.*, 2018 WL 3427873, at *4 (N.D. Ill. July 16, 2018) (conclusory allegation that failed to allege an element of the claim and was "without any supporting factual allegations" was "not a reasonable inference" for the court to make); see also *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Hence, though we are obligated to draw the most favorable inferences that [the plaintiff's] complaint supports, we cannot invent factual allegations that he has not pled.").

As the complaint is pled, Plaintiffs' abuse of process claim is barred by the statute of limitations. But Plaintiffs may know facts that would bring the claim within the one-year limitations period and simply failed to include them in the complaint. To give Plaintiffs a chance to flesh out their pleadings, and because the Court is giving Plaintiffs a chance to amend other claims, Count XVIII is dismissed without prejudice.

iii. *Respondeat Superior Liability*

Count XXI asserts that Defendants Village of Broadview, Village of Riverside, City of Berwyn, and WESTAF were the principals and employers of the individual defendants and are liable for the individual defendants' violations of state law under the doctrine of *respondeat superior*. [1, at ¶¶156-157.] Defendants argue that the underlying state-law claims against the individual defendants ought to be dismissed as time-barred, and if they are dismissed, no claims remain to which *respondeat superior* liability could attach.

Defendants are correct. Because the Court is dismissing the state-law claims against individual defendants, it also dismisses the *respondeat superior* claim against the individual defendants' employers. See, *e.g.*, *Ivy v. Powers*, 2009 WL 230542, at *2 (N.D. Ill. Jan. 30, 2009); *Hobley v. Burge*, 2004 WL 1243929, at *8 (N.D. Ill. June 3, 2004). But this dismissal too is without prejudice; if Plaintiffs can plead amended state-law claims consistent with Rule 11, they may replead the *respondeat superior* claim.

A final note on this topic: the City of Berwyn argues that, to the extent Plaintiffs seek to hold Berwyn liable for its employees' alleged constitutional violations, Plaintiffs have failed to plead a policy or practice as required by *Monell*. As the Court reads the complaint, it does not attempt to plead municipal liability for any constitutional claim other than Count IV, which is pled against the Village of Broadview and addressed above. [1, at ¶¶ 57, 59, 60]. Therefore, the Court need not address Berwyn's arguments regarding municipal liability under *Monell*.

### iii. Indemnification

Count XX asserts a claim for indemnification against the Village of Broadview, the Village of Riverside, and the City of Berwyn under the Illinois Government and Government Employee Tort Immunity Act, 745 Comp. Stat. Ann. 10/9–102, which provides that a local public entity must "pay any tort judgment or settlement for compensatory damages * * * for which it or an employee

while acting within the scope of his employment is liable." The Village of Broadview argues that the indemnification claim must be dismissed against it if all substantive claims against its employees are dismissed. [31, at 15.]

An indemnification claim rises or falls with the underlying substantive claim. See, *e.g.*, *Saunders v. City of Chicago*, 2013 WL 6009933, at *13 (N.D. Ill. Nov. 13, 2013), *on reconsideration in part,* 2014 WL 3535723 (N.D. Ill. July 11, 2014); *Roldan v. Town of Cicero*, 2019 WL 1382101, at *6 (N.D. Ill. Mar. 27, 2019). Here, a few claims survive the motion to dismiss: Count IX, pled against Detective Lazanksy and unknown WESTAF officers, Count VII (which Defendants did not move to dismiss), pled against Detective Lazanksy and unknown WESTAF officers, and Count XIX as to the unknown Broadview Police Department officers. But all claims against employees of the City of Berwyn are dismissed, so Count XX is dismissed as to City of Berwyn. However, this dismissal is without prejudice, as the underlying substantive claims are dismissed without prejudice, and if Plaintiffs can plead amended claims against employees of the City of Berwyn consistent with Rule 11, they may replead the indemnification claim against that municipality.

## IV. Conclusion

For the reasons explained above, the motions to dismiss [29, 31, 33, 51.] are granted in part and denied in part. Specifically, the motions are granted with respect to the following counts: Counts I through VI, VIII, X, XVI, XVIII, and XXI. The motions are denied with respect to Count IX. The motions to dismiss Count XIX are granted with respect to Defendants Davis, Lazansky, and unknown WESTAF officers, but denied with respect to Defendants unknown Broadview Police officers. The motions to dismiss Count XX are granted with respect to the City of Berwyn, but denied with respect to all other Defendants. All dismissals are without prejudice. Plaintiffs

are given until July 10, 2020, to file an amended complaint, if they wish and can do so consistent with Federal Rule of Civil Procedure 11.  This case is set for further status on July 22, 2020 at. 9:00 a.m.

Dated: June 8, 2020

_____
Robert M. Dow, Jr.
United States District Judge

24